## CHICAGO, ROCK ISLAND & PACIFIC RY. CO.

### v.

### LUCY GIVENS.

1. EVIDENCE.—The testimony of a person that he did not hear a familiar sound, like the ringing of a bell, when he admits that he was not listening or thinking of the matter, is entitled to very little, if any, weight.

2. SPEED OF TRAIN.—In the absence of a municipal ordinance regulating the rate of speed, no rate which is consistent with the safety of the train and those on it can be declared to be negligence *per se*.

3. EMPLOYE AS WITNESS.—The mere relation of employe to one of the parties to a suit, be it a railroad company or an individual, is not of itself, apart from any other consideration, any impeachment of a witness.

4. WITNESSES—PREPONDERANCE OF EVIDENCE.—While the preponderance of the evidence does not always depend upon the number of witnesses, yet where many witnesses who are in a position to know the facts as to which they testify concur in their testimony, and are only disputed by a few who have had no better opportunities to know the facts, a jury should not act from mere will or caprice, but should have some tangible and substantial reason for so doing before rejecting the testimony of the many and accepting that of the few.

APPEAL from the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding.     Opinion filed March 8, 1886.

Mr. THOMAS F. WITHROW and Mr. JAMES C. HUTCHINS, for appellant; cited C. & A. R. R. Co. v. Gretzner, 46 Ill. 75; R. R. Co. v. Eaves, 42 Ill. 288; Kelly v. R. & T. Co., 11 Mo. 1; C. R. I. & P. Ry. Co. v. Bell, 70 Ill. 107.

Mr. B. M. SHAFFNER, for appellee; cited Wabash Ry. Co. v. Elliott, 98 Ill. 484; Ewing v. C. & A. R. R. Co., 72 Ill. 25; Chicago W. D. Ry. v. Klauber, 9 Bradwell, 613.

. BAILEY, P. J.    This was an action on the case, brought by the appellee again:t the appellant to recover damages for a personal injury.    The declaration consists of five counts.    The first count charges that the defendant, by its servants, so carelessly and improperly drove and managed their locomotive engine and passenger cars, that by and through the negligence and improper conduct of the defendant, by its servants in that behalf, said engine and cars ran and struck with great force and violence against the plaintiff, and caused the injury complained of.    The negligence charged in the second count is a failure to ring a bell or sound a whistle as required by the statute, thereby causing said injury.    The third count sets up an ordinance of the town of Lake, requiring all railroad companies whose tracks cross any public street in said town, to station and keep at each crossing a flagman to warn persons traveling in the direction of such crossings of the approach of cars and locomotive engines, or other impending danger, and alleges a failure by the defendant to station a flagman at the crossing of the defendant's track, over Fifty-first street, in said town, thereby causing said injury to the plaintiff. The fourth count sets up an ordinance of the town of Lake, prohibiting the running of any locomotive engine or passenger or freight car on any railroad track in said town at a greater rate of speed than ten miles an hour, and avers that said locomotive engine and cars were being run at a greater rate of speed than ten miles an hour in violation of said ordinance, thereby causing said injury.    The fifth count is identical with the first, with the addition of an averment that the plaintiff's occupation was that of a seamstress, and that by reason of her injury she was prevented from pursuing such occupation.

The defendant pleaded the general issue, and the cause being tried before the court and a jury, a verdict was rendered, finding the defendant guilty and assessing the plaintiff's damages at $10,000.    The plaintiff afterward entered a *remittitur damna* as to $3,000 of said damages, and judgment was thereupon rendered in her favor for $7,000 and costs.

No evidence was given of the ordinances set up in the third and fourth counts of the declaration, and the court very

properly instructed the jury to find the defendant not guilty upon those counts. The verdict then can be sustained only under the other counts.

The only charges of negligence we have to consider, so far as the defendant is concerned, are, first, that of carelessly and improperly driving and managing the locomotive engine and cars, as alleged in the first and fifth counts; and second, that of failing to ring a bell or sound a whistle, as alleged in the second count. As to the latter of these charges, we think the evidence clearly and largely preponderates in favor of the defendant. The only witnesses by whom the plaintiff sought to prove that no bell was rung, apart from her own testimony, were James Watson and Thomas and John McCann. All three of these witnesses, while testifying that they heard no bell, admit that they were not listening or paying any particular attention to the matter. Common experience teaches us that the testimony of a person that he did not hear a familiar sound, like the ringing of a bell, when he admits that he was not listening or thinking of the matter, is entitled to very little, if any, weight. See remarks of Mr. Justice Cooley on this subject in Marcott v. M., H. & O. R. R. Co., 49 Mich. 99. The plaintiff testified, it is true, that she listened and heard no bell. On the other hand, the fireman, whose business it was to see that the bell was ringing, testifies positively that there was a bell rung by steam, which had been ringing continuously several miles before reaching the crossing. McMasters, who was in the employ of the defendant as a yardmaster, and who was standing near the track about six rods from the place of the accident, in the direction from which the train was coming, also swears that he heard the bell ring, and that he usually took notice of every train to see whether the bell was ringing. Ryan, another yardmaster, who was standing at the crossing, Porter, a brakeman, who was standing on the platform of one of the cars, Jenkins, the engineer in charge of the engine, and Twomley, an engineer, who was standing at the crossing, all swear that the bell was ringing, and that they heard it. Most of these witnesses, as well as several others, testify that the usual signal for the crossing was also given by

blowing the whistle, and as to that there is no material contradiction. This evidence creates a clear and unmistakable preponderance in favor of the defendant. The jury could not properly find that no bell was rung or whistle sounded, and their verdict, so far as it is based upon the second count of the declaration, can not be sustained.

As to the negligence charged in the first and fifth counts, the only misconduct complained of, so far as we can see, is that of running the train at a high rate of speed. In the absence of a municipal ordinance regulating the rate of speed, no rate which is consistent with the safety of the train and those on it, can be declared to be negligence *per se.* Rapidity of travel and the vast saving of time resulting therefrom to the community are among the capital benefits which are conferred upon the public by railroads, and railroad companies are at liberty, when not restrained by positive law, to adopt the highest rate of speed consistent with the safety of the persons and property which they undertake to transport.

We are unable to see, in the light of the foregoing principles, that any rate of speed was established by the evidence which justified the jury in convicting the defendant of negligence. While the plaintiff and perhaps Watson testify that the train was running at a high rate of speed, neither they nor any of the plaintiff's witnesses attempt to be specific as to the rate except Thomas and John McCann. The former, though disclaiming any experience which would enable him to tell anything about it, being pressed by counsel finally ventured an opinion that the train was running at from twenty-five to thirty miles an hour. John McCann, a lad seventeen years of age, and who from the circumstances disclosed by the evidence must have been so occupied at the time as to be able to give the approaching train but little attention, fixed the rate at thirty-five miles an hour. On the other hand eight witnesses, all of them men of experience in railroad matters, testified for the defendant, and all fixed the rate at from eight to twelve miles an hour. It is true these witnesses were all, in one form or another, in the employment of the defendant, but none of them, with the exception perhaps of the engineer and

fireman, can be said to have any interest in the suit or any responsibility, either pecuniary or moral, for the injury to the plaintiff. We have yet to learn that the mere relation of employe to one of the parties to a suit, be it a railroad company or an individual, is of itself, apart from any other consideration, any impeachment of a witness. It is true the preponderance of the evidence does not always depend upon the number of witnesses, but where many witnesses who are in a position to know the facts as to which they testify, concur in their testimony, and are only disputed by a few who have had no better opportunities to know the facts, a jury should not act from mere will or caprice, but should have some tangible and substantial reason for so doing, before rejecting the testimony of the many and accepting instead that of the few witnesses. No such reason is apparent in this record. The clear preponderance of the evidence seems to us to show that the defendant's train, at the time the plaintiff was injured, was not running at to exceed twelve miles an hour, and so far as we can see, the evidence furnished the jury no ground for holding that such rate of speed was negligent.

We are also of the opinion that the evidence shows a want of ordinary care on the part of the plaintiff at time of the injury. At the Fifty-first street crossing, there are a large number of parallel tracks belonging to the defendant and to the Lake Shore and Michigan Southern Railway Company, crossing the street at right angles. On either side of said tracks are gates or bars which are kept in a perpendicular position while no trains are passing or approaching, but which are turned down to a horizontal position by the flagman so as to form a barrier across the street when a train is about to pass. Just before the accident, the plaintiff, in company with witness Watson, a man who seems to have been somewhat infirm, was walking toward the crossing on Fifty-first street. They were walking leisurely, and on reaching a point near the first track, they stopped and stood conversing with each other for a few minutes. As they were about to proceed, they saw a flagman who was standing at the crossing, make some motion with his hand or flag, and call to them, as they testify, " Come

C., R. I. & P. Ry. Co. v. Givens.

on." They admit that they understood from the words and gestures of the flagman that there was danger, and that there was a train approaching. The evidence seems to show that before stepping onto the track where the accident happened, and while the train was a considerable distance away, both the plaintiff and Watson saw and knew that the train was approaching. Notwithstanding this, they pressed forward in haste to get across in advance of the train. The plaintiff succeeded in getting Watson, who could walk but slowly, safely across, and stepped across the track herself, but not far enough to escape a projecting part of the engine, which struck her and inflicted the injury complained of.

The evidence furnishes very considerable ground for believing that the plaintiff and Watson were mistaken in supposing that the flagman beckoned or called to them to come across, but that his gestures and words were both intended to indicate danger and to deter them from coming; but even if their version of his conduct is correct, we can not see how it justified the plaintiff in making a rash and needless attempt to cross the track after she knew and saw the approaching train. If it be admitted that she saw the train or knew of its approach in sufficient time to arrest her steps and wait for it to pass by, and such we think is the fair conclusion to be derived from the evidence, there is no view of her conduct which we can take, which exculpates her from the charge of gross negligence.

A number of other errors are assigned which we do not deem it necessary to notice; but as the verdict of the jury seems to be contrary to the clear preponderance of the evidence, the judgment will be reversed for that reason, and the cause remanded for a new trial.

Judgment reversed.